# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **MON DEE SHANELL TAYLOR,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **Civil Action No. CV-09-S-1279-NE** |
| ) | |
| **THE CITY OF DECATUR,** ) | |
| **ALABAMA, HOUSING** ) | |
| **AUTHORITY,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff, MonDee Taylor, is a participant in a Section 8 Housing Choice Voucher program administered by defendant, the City of Decatur, Alabama, Housing Authority, pursuant to the United States Housing Act, 42 U.S.C. § 1437.[1] Under that program, plaintiff received vouchers to assist her with payment of rent.[2] Plaintiff's voucher was conditioned on her agreement not to "engage in drug-related criminal activity or violent criminal activity or other criminal activity that threatens the health, safety or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises."[3]

---

[1] Doc. no. 1 (Verified Complaint), at ¶ 6; doc. no. 7 (motion for preliminary injunction), exhibit 1 (Affidavit of Mon Dee Shanell Taylor), at 1.

[2] Verified Complaint, at ¶ 7.

[3] Doc. no. 11 (response to motion for preliminary injunction), at Exhibit D (April 17, 2009 letter from Jeffrey Snead to Mon Dee Taylor).

Plaintiff was arrested on drug charges at her residence on April 6, 2009. On April 17, 2009, defendant informed plaintiff that her participation in the voucher program would be terminated "due to the fact of [her] drug-related criminal activity." Defendant also informed plaintiff that she had ten (10) days to appeal the termination decision.[4] Plaintiff appealed, and she received a hearing on May 12, 2009. The hearing officer upheld the decision to terminate her participation in the voucher program.[5] Plaintiff filed this lawsuit on June 25, 2009, alleging violations of federal regulations governing the activities of the United States Department of Housing and Urban Development ("HUD"), as well as denial of her constitutional right to procedural due process.[6]

The case presently is before the court on plaintiff's motion for a preliminary injunction.[7] Plaintiff requests the court to require defendant to continue providing her Section 8 housing benefits during the pendency of this action. The court conducted an evidentiary hearing on plaintiff's motion on Wednesday, September 9, 2009. Both parties presented live testimony, documentary evidence, and oral argument.

To succeed on her request for preliminary injunctive relief, plaintiff must

---

[4]*Id.*
[5]Doc. no. 11, at Exhibit E (May 13, 2009 letter from Jeanne Newsom to MonDee Taylor).
[6]*See* doc. no. 1 (Complaint); doc. no. 10 (Amended Complaint).
[7]Doc. no. 7.

satisfy four elements: (1) demonstrate a substantial likelihood of success on the merits of her underlying claims; (2) show irreparable harm in the absence of an injunction; (3) show that the absence of an injunction would cause her greater harm than the issuance of an injunction would cause defendant; and (4) show that an injunction would not disserve the public interest. *North American Medical Corp. v. Axiom Worldwide, Inc.,* 522 F.3d 1211, 1217 (11th Cir. 2008) (citation omitted).[8]

---

[8] The first of these prerequisites may have been bent by the United States Supreme Court's December 9, 2000 decision in *Bush v. Gore*, 531 U.S. 1046, 121 S.Ct. 512 (2000), staying the implementation of the mandate of the Supreme Court of Florida to recount votes cast in that State during the November 2000 Presidential election. The factors traditionally applied by federal courts when determining whether a stay of judgment should be granted pending appeal are virtually identical to the foregoing prerequisites for entry of a temporary restraining order or preliminary injunctive relief. Those stay factors are: (1) *whether the stay applicant has made a strong showing that he is likely to succeed on the merits*; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies. *See, e.g., Hilton v. Braunskill*, 481 U.S. 770, 777 (1987) (emphasis supplied).

However, the Supreme Court recast the first factor in its ultimate decision on the 2000 Presidential vote recount in the State of Florida, *Bush v. Gore*, 531 U.S. 98 (2000) (*per curiam*), decided on December 12, 2000. There, the Court explained that it had granted a stay of the Florida recount in the following manner:

> When a court orders a statewide remedy, there must be at least some assurance that the rudimentary requirements of equal treatment and fundamental fairness are satisfied.
>
> Given the Court's assessment that the recount process underway was *probably* being conducted in an unconstitutional manner, the Court stayed the order directed the recount so it could hear this case and render an expedited decision. . . .

*Bush v. Gore*, 531 U.S. at 109 (emphasis supplied). In other words, the first factor for determining whether to grant the extraordinary remedy of a stay was recast from "whether the stay applicant has made a strong showing that he is likely to succeed on the merits" to a much less onerous burden: *i.e.*, "whether the stay applicant has shown that he *probably* will succeed on the merits."

The correctness of this assessment of the impact of *Bush v. Gore* upon the factors for entry

3

Plaintiff clearly is faced with irreparable harm if an injunction does not issue. She testified at the September 9th hearing that she cannot afford her rent without Section 8 assistance, that she has fallen behind on her rental payments, and that she faces eviction on September 14, 2009, if her payments are not brought up to date. Indeed, the District Court of Morgan County, Alabama entered an order on August 18, 2009, stating that a Writ of Possession would be entered in favor of plaintiff's landlords, but that execution of the writ would be stayed until noon on September 14, 2009. The landlords' case against plaintiff can be dismissed if, by September 14, 2009, plaintiff "is able to restore the government subsidy which had previously paid a portion of her rent." However, if plaintiff is not able to restore the government subsidy, she is "subject to removal by the Sheriff on September 14, 2009 at noon."[9] This court readily concludes that plaintiff will suffer irreparable harm if she is rendered homeless.[10]

---

of a stay, or the prerequisites for the entry of a TRO or a preliminary injunction, is not for this court to say — at least not in this controversy, because the resolution of the present motions does not depend upon it.

The court also finds it interesting that the Supreme Court Reporter reversed the order of publication of the two *Bush v. Gore* decisions referenced above. The December 9, 2000 decision should have been published *before* (and therefore at a lower page number) than the December 12, 2000 decision.

[9]Plaintiff's Exhibit 1 from the September 9, 2009 evidentiary hearing (August 18, 2009 Order from the District Court of Morgan County, Alabama, in *Gordon v. Taylor,* Case No. DV-2009-000441.00).

[10]Defendant suggested at the September 9, 2009 hearing that plaintiff might not suffer as much irreparable harm as she claims because her children may not be currently residing with her. Plaintiff testified, however, that both of her children are currently in her custody and residing at her

Furthermore, while defendant might suffer some harm if a preliminary injunction is granted — because defendant would have to pay plaintiff's benefits when she might not be entitled to them, and because other Section 8 participants might perceive defendant's policy prohibiting drug-related activity to have become less stringent — plaintiff will suffer greater harm (homelessness) if an injunction does not issue.  Similarly, while the public does have some interest in not providing housing assistance to individuals who are engaging in drug activity, the public also has an interest in ensuring that individuals receiving public assistance are not rendered homeless without being provided due process.

Thus, the only real dispute is with regard to the first requirement for injunctive relief, plaintiff's likelihood of success on the merits of her underlying claims.

In that regard, HUD regulations state that defendant may

> terminate assistance for criminal activity by a household member as authorized in this section if the PHA [Public Housing Authority] determines, based on a preponderance of the evidence, that the household member has engaged in the activity, regardless of whether the household member has been arrested or convicted for such activity.

20 C.F.R. § 982.553(c).   The regulations also require the public housing authority to provide notice of the denial of a participant's benefits and the opportunity for informal review or a hearing.  *See* 24 C.F.R. §§ 982.554(a) & (b), 982.555(c)(2).

---

home.  That issue is irrelevant, because, regardless of whether plaintiff's children currently are residing with her, *she* still will suffer irreparable harm if she loses her home.

Furthermore, "[w]here a hearing for a participant family is required under this section, the PHA must proceed with the hearing in a reasonably expeditious manner upon the request of the family." 24 C.F.R. § 982.555(d).

The following provisions also govern the procedure to be followed before and during the hearing:

> (e) Hearing procedures —
>
>> . . . .
>>
>> (2) Discovery —
>>
>>> (i) By family. The family must be given the opportunity to examine before the PHA hearing any PHA documents that are directly relevant to the hearing. The family must be allowed to copy any such document at the family's expense. If the PHA does not make the document available for examination on request of the family, the PHA may not rely on the document at the hearing.
>>>
>>> (ii) By PHA. The PHA hearing procedures may provide that the PHA must be given the opportunity to examine at PHA offices before the PHA hearing any family documents that are directly relevant to the hearing. The PHA must be allowed to copy any such document at the PHA's expense. If the family does not make the document available for examination on request of the PHA, the family may not rely on the document at the hearing.
>>>
>>> (iii) Documents. The term "documents" includes records and regulations.
>>
>> (3) Representation of family. At its own expense, the family may

>be represented by a lawyer or other representative.
>
>>(4) Hearing officer: Appointment and authority.
>
>>>(i) The hearing may be conducted by any person or persons designated by the PHA, other than a person who made or approved the decision under review or a subordinate of this person.
>
>>>(ii) The person who conducts the hearing may regulate the conduct of the hearing in accordance with the PHA hearing procedures.
>
>>(5) Evidence.  The PHA and the family must be given the opportunity to present evidence, and may question any witnesses. Evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings.
>
>>(6) Issuance of decision.  The person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision. Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing.  A copy of the hearing decision shall be furnished promptly to the family.

24 C.F.R. § 982.555(e)(2)-(6).

In addition to these regulatory requirements, "the Due Process Clause of the U.S. Constitution requires that welfare recipients be afforded an evidentiary hearing with minimum procedural safeguards before their benefits may be terminated." *Basco v. Machin,* 514 F.3d 1177, 1182 n.7 (11th Cir. 2008) (quoting *Goldberg v. Kelly,* 397 U.S. 254, 266 (1970)).

At that hearing, the public housing authority "has the burden of persuasion *and must initially present sufficient evidence to establish a prima facie case*" that benefits should be terminated. *Basco,* 514 F.3d at 1182 (emphasis supplied). "Thereafter, the Section 8 participant has the burden of production to show" that her benefits should be continued. *Id.*

There is no evidence in this court's record that defendant satisfied its initial burden of persuasion during the administrative hearing. Instead, the only evidence presented to this court indicates that defendant did not offer *any* evidence during the administrative hearing, but instead placed the burden on plaintiff in the first instance to refute the charges asserted against her. The evidence further indicates that defendant based its decision to terminate plaintiff's benefits — as well as its subsequent decision to uphold the termination of benefits — upon a review of plaintiff's case file and a newspaper article. There is no indication that plaintiff had access to either of these items prior to the administrative hearing, or any notice that the file and newspaper article would be relied upon during the hearing. Thus, without access to all of the information in defendant's possession, and without hearing what evidence defendant had against her, plaintiff was forced to make her case. Those circumstances do not satisfy the constitutional guarantee of procedural due process.

Based on the foregoing, plaintiff has demonstrated a substantial likelihood of

prevailing on the merits of her claims for violation of HUD regulations and violation of her constitutional right to procedural due process. She has therefore satisfied all of the requirements for preliminary injunctive relief, and her motion for a preliminary injunction is due to be granted. An appropriate order will be entered contemporaneously herewith.

     DONE this 10th day of September, 2009.

                                              /s/ Lynwood Smith
                                              United States District Judge