## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| MON DEE SHANELL TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-09-S-1279-NE |
| | ) | |
| THE CITY OF DECATUR, | ) | |
| ALABAMA, HOUSING | ) | |
| AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff, Mon Dee Shanell Taylor, filed this case on June 25, 2009, asserting claims against the Housing Authority of the City of Decatur, Alabama ("Housing Authority").[1]  She claims that the Housing Authority wrongfully terminated her Section 8 housing benefits in violation of her right to due process under the Fourteenth Amendment to the United States Constitution.[2]  She also claims that the Housing Authority violated federal housing statutes and regulations by failing to: advise her of the specific grounds for the termination of her benefits; provide her with any documents or records related to the termination; inform her of her right to pursue a formal hearing; or provide her with an impartial hearing officer, as well as by

---

[1]See doc. no. 1 (Complaint).  See also doc. no. 35 (Second Amended Complaint).

[2]See Second Amended Complaint, at ¶¶ 20-24.  Plaintiff brought her Fourteenth Amendment claims pursuant to 42 U.S.C. § 1983.

relying on a hearing officer's decision that was based upon hearsay and other unreliable evidence.[3]

Plaintiff filed a motion for a preliminary injunction on August 20, 2009.[4] After a hearing at which both documentary and testimonial evidence was presented, this court entered an order requiring defendant to "reinstate plaintiff's Section 8 housing benefits, retroactive to the date of their termination, and continue to pay those benefits through and including the date of final disposition of this case."[5]

The case currently is before the court on the parties' cross-motions for summary judgment,[6] as well as defendant's motion for leave to initiate termination proceedings for plaintiff's housing benefits.[7] Upon consideration of the motions, the parties' briefs, the evidentiary submissions, and the arguments of counsel,[8] the court concludes that defendant's motion for summary judgment should be denied, and plaintiff's motion for summary judgment should be granted. Judgment will be entered in plaintiff's favor on her claims for violations of her procedural due process rights, but only nominal damages will be awarded. Defendant's motion for leave to

---

[3]Second Amended Complaint, at ¶¶ 14-19.

[4]Doc. no. 7.

[5]Doc. no. 13 (Preliminary Injunction), at 1.

[6]*See* doc. no. 20 (defendant's motion for summary judgment); doc. no. 30 (plaintiff's motion for summary judgment).

[7]Doc. no. 44.

[8]The court heard oral argument on all pending motions on November 30, 2010.

initiate termination proceedings will be granted.

## I. SUMMARY JUDGMENT STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[9] In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). Inferences in favor of the non-moving party are not unqualified, however. "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d

---

[9] Rule 56 was amended, effective December 1, 2010, in conjunction with a general overhaul of the Federal Rules of Civil Procedure. The Advisory Committee was careful to note, however, that the changes "will not affect continuing development of the decisional law construing and applying these phrases." Adv. Comm. Notes to Fed. R. Civ. P. 56 (2010 Amends.) (emphasis supplied). Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

1321, 1324 (11th Cir. 1983).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis supplied).

*See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

> "Cross motions for summary judgment do not change the standard." *Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church*, 499 F.3d 32, 38 (1st Cir. 2007). "'Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.'" *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)). "Even where the parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts." *Id.*; *accord Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999) ("When considering motions from both parties for summary judgment, the court applies the same standard of review and so may not resolve genuine issues of material fact. Instead, [the court must] consider and rule upon each party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard.") (citations omitted).

*Ernie Haire Ford, Inc. v. Universal Underwriters Insurance Co.*, 541 F. Supp. 2d

1295, 1297-98 (M.D. Fla. 2008).  *See also American Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005) ("This court reviews the district court's disposition of cross-motions for summary judgment de novo, applying the same legal standards used by the district court, viewing the evidence and all factual inferences therefrom in the light most favorable to the non-movant, and resolving all reasonable doubts about the facts in favor of the non-moving party.").

## II. SUMMARY OF FACTS RELEVANT TO SUMMARY  JUDGMENT

Plaintiff, Mon Dee Shanell Taylor, is a participant in the Housing Assistance program operated by the Housing Authority of the City of Decatur, Alabama ("Housing Authority"), pursuant to Section 8 of the Housing Act of 1937, 42 U.S.C. § 1937f ("Section 8").[10]  On April 16, 2009, the Decatur City Police executed a search warrant on plaintiff's residence.  As a result of that search, plaintiff was arrested for possession of drug paraphernalia.  Henry James Malone, Jr., the father of plaintiff's child, also was arrested in plaintiff's apartment for other drug-related charges.[11]  In her deposition, plaintiff admitted the arrest, but denied her guilt of the charges against

---

[10]Doc. no. 22 (Amended Complaint), at ¶ 4.  The Section 8 program provides "assistance payments . . . with respect to existing housing," "for the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing."  42 U.S.C. § 1437f(a).

[11]Defendant's evidentiary submission, Exhibit B (Deposition of Mon Dee Shanell Taylor), at 34, 50, 61-64.

her.[12]

Janet Corn, plaintiff's case worker at the Housing Authority, learned of plaintiff's arrest from an anonymous tip left on her voice mail on April 17, 2009. Corn investigated the tip by searching for a record of plaintiff's arrest on the Alacourt website.  When she did not find any results there, she contacted the City jail, where the booking officer confirmed that plaintiff had been arrested for possession of drug paraphernalia and subsequently released.[13]  That same day, Ms. Corn sent plaintiff a letter stating:

> Your assistance through the Decatur Housing Authority Section 8 Housing Choice Voucher Program is hereby being terminated.  This termination is due to the fact of your drug-related criminal activity.
>
> Per the Voucher you signed it states  4.  Obligations of the Family D.  The family (including each family member) must not:  4.  Engage in drug-related criminal activity or violent criminal activity or other criminal activity that threatens the health, safety or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises.
>
> Per the Obligations of the Participating family  K.  Crime by Family members of the family may not engage in drug-related criminal activity or other violent criminal activity.
>
> You have ten (10) days from the date of this letter to appeal this decision by writing this office requesting an informal hearing.[14]

---

[12]*See, e.g.,* Taylor Deposition, at 64.

[13]Defendant's evidentiary submission, Exhibit C (Deposition of Janet Corn), at 30-32.

[14]Taylor Deposition, at Exhibit 2 (April 17, 2009 letter).

After receiving this termination letter, plaintiff requested an informal hearing.[15]

Plaintiff's letter requesting the informal hearing, dated April 30, 2009, states in full:

> To whom this may concern:
>
> On April 16, 09 Decatur Police came to my house looking for drugs and found no drugs on me or my kids I was not charge with any drugs.  [sic]  I think the only reason I am fighting for my voucher is because of Susie Jones.  The reason I say that is because when the police came to my house Miss Jones was sitting on car [sic] on her cell phone with 3 or more girl friends right their [sic] with her.  She and friends was [sic] just loud laughing saying all kind of things that was not true about me and my kids unlike the newspaper did as well.[sic]  That is the real reason I think that my voucher is on the line.  I would never bring drugs, violents [sic] or danger around my kids.  When I got someone working for Section 8 program that is saying untrue things in the street and taking money under the table to do things on the program that the director no [sic] nothing about, how can I keep my voucher.[16]

Plaintiff's informal hearing was held on May 12, 2009, in the Section 8 Rental

Assistance Office.   Jeanne Newsom, the Executive Secretary at the Housing

Authority's central office, served as the hearing officer.  Ms. Newsom had nothing

to do with the initial decision to terminate plaintiff's benefits.   Her immediate

supervisors are the Chief Operations officer and the Executive Director of the

Housing Authority, and she does not work on a day-to-day basis with the employees

of the Section 8 division.[17]  Ms. Newsom regularly served as a hearing officer for the

---

[15]Taylor Deposition, at 76-77.

[16]Defendant's evidentiary submission, Tab D (Affidavit of Arleen Hall), at Exhibit 1.

[17]Defendant's evidentiary submission, Tab E (Deposition of Jeanne Newsom), at 10-11, 24-26.

Housing Authority, but she never received any formal training about the procedures for conducting hearings.[18]  Ms. Newsom had previously served as a hearing officer in 2007, following the revocation of plaintiff's housing benefits as a result of her arrest on drug-related charges.  On that occasion, however, Ms. Newsom decided that plaintiff's benefits should be reinstated after plaintiff produced evidence that her drug-related charges were being *nolle prossed.*[19]

Approximately thirty minutes before the May 12 hearing, Ms. Newsom obtained plaintiff's file from the Section 8 office.  This was in accordance with her usual practice of reviewing participants' files before informal hearings.[20]  Plaintiff had the right to review her file before the hearing, but she did not request to do so.[21]

Plaintiff's file contained a copy of an article from the April 21, 2009 edition of *The Decatur Daily* newspaper.  The article bore the heading "Couple arrested after son, 2, shows drug bag to officers, Decatur police say."  The full text of the article is as follows:

> A Decatur man and woman went to jail Thursday after police said their 2-year-old son walked up to officers holding a baggie containing drug residue.

---

[18]*Id.* at 14-18.

[19]Taylor Deposition, at 37-48.

[20]Newsom Deposition, at 25-27.

[21]Plaintiff's evidentiary submission, Tab F (Deposition of Arleen Hall), at 31; Taylor Deposition, at 99.

While executing a search warrant at 1214 Thomas Drive S.W., Investigator Archie Letson with the Decatur Police Department said Organized Crime officers found the child with a bag commonly used to package narcotics.  Police arrested the child's parents, Harry James Malone, Jr., 28, and Mondee Taylor, 30.

"As officers walked into the residence, they detected the strong odor of burnt marijuana throughout the home," Letson said.  "While securing Malone and Taylor, they saw the 2-year-old boy walking towards them holding a plastic baggie in each hand."

Sparks said police examined the bags and determined one contained marijuana residue and the other baggie was used to package several different types of controlled substances.

"During the search, officers found a marijuana blunt on the couch in reach of the child," Sparks said.  "They also located a quantity of marijuana in the home that was more than for personal use."

Police said they also found drug-sale paraphernalia, prescription drugs and a police scanner.

"Malone was additionally charged for selling cocaine to a cooperating witness on three separate occasions," Sparks said.

Police charged Malone and Taylor with endangering the welfare of children and possession of drug paraphernalia.  Malone was also charged with first-degree possession of marijuana, Sparks said.

Both were booked into Decatur City Jail, where Taylor was released on $1,000 bail.  Malone was transferred to Morgan County Jail, where he was released on $18,500 bail.[22]

The individuals present at plaintiff's informal hearing included plaintiff, Ms.

---

[22]Tiffany Hurtado, *Couple arrested after son, 2, shows drug bag to officers, Decatur police say,* The Decatur Daily, April 21, 2009, at A1, A6.

Newsom, Arleen Hall, the Section 8 Coordinator for the Housing Authority, and Shelia Sambrano, an assistant to Ms. Hall.[23]  Janet Corn, plaintiff's caseworker at the time, did not attend the hearing.  The hearing lasted approximately thirty minutes, and it was neither recorded nor transcribed.[24]

The Housing Authority relied upon the information in plaintiff's case file during the hearing; no additional evidence was presented by either side, and no witnesses testified on behalf of either plaintiff or the Housing Authority.[25]  Even so, plaintiff and the Housing Authority representatives all were given the opportunity to speak during the hearing.  A copy of plaintiff's file, including *The Decatur Daily* article quoted above, was on the table in the hearing room throughout the hearing, but plaintiff did not ask to review the file.[26]  Plaintiff clearly knew about the article and its contents prior to the hearing, because she previously had asked the reporter to retract the story.  It is not clear, however, that plaintiff had ever actually read the article.[27]  During the hearing, plaintiff acknowledged that she had been arrested for possession of drug paraphernalia, but denied that she actually engaged in any criminal

---

[23]Taylor Deposition, at 81.

[24]*Id.* at 83.

[25]*See* defendant's evidentiary submission, Tab F (Transcript of September 9, 2009 Preliminary Injunction Hearing).

[26]Taylor Deposition, at 83-86.

[27]*Id.* at 96-98.

activity.[28]  Newsom's notes from the informal hearing reflect the following:

> Ms. Taylor denied any wrong doing on her part.  She stated Mr. Malone had some drugs in his pocket, but there were none in her house. The Police and the *Decatur Daily* just made up the story that appeared in the newspaper.

> According to Ms. Taylor, the only drug paraphernalia they found were box cutters from work that she had in the pocket of her smock.

> The baggies that were reported in the possession of her toddler were merely pieces of plastic from a sponge wrapper she had opened and the child picked from the garbage can.

> Mr. Malone was only there for 10 minutes.  He came to give her money for the child ($90.00).  When asked how frequently he gave her money, she said she "hadn't even seen him for three weeks."

> She said someone just "had it in for her" and she was being harassed.

> She stated that she "worked from 1:30 p.m. to 10:30 p.m. and didn't have time for drugs."  Her work verification stated she works 15-20 hrs. per week, but didn't work that now, she is on a leave of absence because of the publicity of this incidence.[29]

Ms. Newsom also noted that plaintiff was angry and complained that the Section 8 Program retained other participants even though they were arrested for crack cocaine.[30]

After the hearing, Ms. Newsom had a conversation with Susie Jones, another

---

[28]*Id.* at 86-95; Newsom Deposition, at 31-32.

[29]Newsom Deposition, Exhibit 1, at 1.

[30]*Id.*

employee of the Section 8 division, about the events surrounding plaintiff's complaint.  Ms. Newsom chose to talk to Ms. Jones because plaintiff had mentioned, both in her request for an informal hearing and during the hearing itself, that Ms. Jones witnessed her arrest and spread untrue stories about her, and because plaintiff accused Ms. Jones of "taking money under the table" to do favors for people with regard to their Section 8 housing benefits.[31]   Ms. Newsom's notes of her interview with Ms. Jones reflect that Ms. Jones acknowledged witnessing plaintiff's arrest but denied ever taking any money under the table for her work on the Housing Authority.[32]  Ms. Newsom testified that she considered her conversation with Ms. Jones to be "part of the hearing."[33]

Ms. Newson decided to uphold the termination of plaintiff's Section 8 benefits. She testified during her deposition that she based her decision on plaintiff's statements during the hearing and the information reported in *The Decatur Daily* news article.[34]  She also testified during the September 9, 2009 preliminary injunction hearing that she considered the fact that plaintiff had a previous hearing on a drug-related charge, as well as the fact that plaintiff allowed Mr. Malone into her home,

---

[31]Newsom Deposition, at 50-55.

[32]Newsom Deposition, Exhibit 1, at 1-2.

[33]Newsom Deposition, at 53.

[34]*Id.* at 40-41.

even though she knew he had been arrested before on drug-related charges.[35]

Furthermore, Ms. Newson did not find plaintiff's testimony about being innocent of

all criminal activity to be entirely credible.  In her opinion, it did not make sense that

*The Decatur Daily* article would be correct as to Harry Malone, Jr.'s involvement in

the incident, but not as to plaintiff's involvement.[36]  Newsom did not review any

arrest report or other police records prior to making her decision to uphold the

termination of plaintiff's benefits.[37]

The Housing Authority sent plaintiff a letter on May 13, 2009, to inform her

of the outcome of the informal hearing.  The letter stated:

> Dear Ms. Taylor:
>
> At your request, an Informal Hearing was held May 12, 2009 at
> 9:30 a.m. at the Section 8 Rental Assistance Office located at 907 10th
> Avenue NE.   Those present were Ms. Arleen Hall, Section 8
> Coordinator, Mrs. Jeanne Newsom, Hearing Officer, and yourself.
>
> The Decatur Police Department executed a search warrant at your
> residence on April 16, 2009.  You and Harry James Malone, Jr., the
> father of your two year old son, were arrested on drug-related charges.
>
> Mr. Malone has a history of arrests.  When asked at your informal
> hearing if Mr. Malone had been arrested before, you stated you know of
> one incident.  I must assume you knew of his background but allowed
> him entrance to your residence.

---

[35]Transcript of September 9, 2009 Preliminary Injunction hearing, at 16.

[36]*Id.* at 19-20.

[37]*Id.* at 16.

As I have informed you previously, the Department of Housing and Urban Development (HUD) Regulations (24 CFR 982.553) specifically state the action Housing Authorities may take in regard to drug related criminal activity.  A conviction is not necessary for the Housing Authority to terminate assistance.

This is your notice that your participation in the Housing Choice Voucher Program will terminate effective May 31, 2009.[38]

## III. FACTS RELEVANT TO DEFENDANT'S MOTION TO INITIATE TERMINATION PROCEEDINGS

Plaintiff was again arrested on July 16, 2009, on charges of distribution of cocaine.[39]   On May 10, 2010, plaintiff pled guilty to charges of "possession of cocaine, lesser included offenses as charged in Counts I and II AND chemical endangerment of a child as charged in Ct. VIII" of the indictment in *State of Alabama v. Mon Dee Shanell Taylor,* Morgan County Case Number 09-1161.[40]   Count I of the indictment in Case Number 09-1161 stated that plaintiff

did unlawfully sell, furnish, or give to Vivian Stone on, to wit:  August 29, 2008 in or near Decatur, Morgan County, Alabama, a quantity of cocaine, and she did commit said offense within a three (3) mile radius of the campus boundaries of a public or private school, college, university or other educational institution (13A-12-250), and within a three (3) mile radius of a public housing project owned by a housing authority (13A-12-270), in violation of Section 13A-12-211 of the Code

---

[38]Taylor Deposition, at Exhibit 7.

[39]*See* doc. no. 44 (Motion for Leave to Initiate Termination Proceedings), at Exhibit 1 (criminal complaint, affidavit, arrest warrant, and appearance bond).

[40]*See id.* at Exhibit 2 (Judgment of Conviction), at 1 (capitalization in original).

of Alabama.[41]

Count II stated that plaintiff

> did unlawfully sell, furnish, or give to Vivian Stone on, to wit:
> September 30, 2008, in or near Decatur, Morgan County, Alabama, a
> quantity of cocaine, and the said defendants did commit said offense
> within a three (3) mile radius of the campus boundaries of a public or
> private school, college, university or other educational institution (13A-
> 12-250), and within a three (3) mile radius of a public housing project
> owned by a housing authority (13A-12-270), in violation of Section
> 13A-12-211 of the Code of Alabama.[42]

Count VIII stated that plaintiff,

> who had the permanent or temporary care or custody or responsibility
> for the supervision of Harry Malone, III, a child under the age of
> eighteen (18) years, did knowingly, recklessly, or intentionally cause or
> permit said child to be exposed to,  to ingest or inhale, or to have contact
> with a controlled substance, chemical substance, or drug paraphernalia,
> to wit:  a baggie with marihuana residue, in violation of Section 26-15-
> 3.2 of the Code of Alabama.[43]

The remaining counts of the indictment were either dismissed, or brought solely

against Harry Malone, Jr.

## IV. DISCUSSION

### A.    Motion for Leave to Initiate Termination Proceedings

Plaintiff offers no viable argument in opposition to defendant's motion for

---

[41]*Id.,* Exhibit 2, at unnumbered page 4 (Indictment).

[42]*Id.*

[43]*Id.* at unnumbered page 5.

leave to initiate proceedings to terminate her housing benefits. This is because, as a result of plaintiff's plea of guilty to drug-related crimes on May 10, 2010, defendant clearly is entitled to at least *initiate* termination proceedings. *See* 24 C.F.R. § 982.553(c) (stating that a housing authority may "terminate assistance for criminal activity by a household member"). Plaintiff's attorney acknowledged as much during the oral argument conducted on November 30, 2010. Accordingly, defendant's motion for leave to initiate terminate proceedings is due to be granted.

The only remaining issue is whether plaintiff's due process rights were violated when defendant reviewed the April 17, 2009 decision to terminate plaintiff's housing benefits through an aptly-described "informal" hearing process.

## B.    Merits of Plaintiff's Due Process Claim

Federal regulations state that a Public Housing Authority ("PHA") may

terminate assistance for criminal activity by a household member as authorized in this section if the PHA determines, based on a preponderance of the evidence, that the household member has engaged in the activity, regardless of whether the household member has been arrested or convicted for such activity.

20 C.F.R. § 982.553(c).

The regulations also require the public housing authority to provide notice of the denial of a participant's benefits and the opportunity for informal review or a hearing. *See* 24 C.F.R. §§ 982.554(a) & (b), 982.555(c)(2). "The notice must contain

16

a brief statement of the reasons for the PHA decision. The notice must also state that

the applicant may request an informal review of the decision and must describe how

to obtain the informal review." 24 C.F.R. § 982.554(a).  Another regulatory provision

sets forth the following notice requirements:

> [T]he PHA must give the family prompt written notice that the family
> may request a hearing. The notice must:
>
>> (i) Contain a brief statement of reasons for the decision,
>>
>> (ii) State that if the family does not agree with the decision, the
>> family may request an informal hearing on the decision, and
>>
>> (iii) State the deadline for the family to request an informal
>> hearing.

24 C.F.R. § 984.555(c)(2).  The following regulation generally governs the informal

review process:

> The PHA must give an applicant an opportunity for an informal review
> of the PHA decision denying assistance to the applicant. The
> administrative plan must state the PHA procedures for conducting an
> informal review. The PHA review procedures must comply with the
> following:
>
>> (1) The review may be conducted by any person or persons
>> designated by the PHA, other than a person who made or
>> approved the decision under review or a subordinate of this
>> person.
>>
>> (2) The applicant must be given an opportunity to present written
>> or oral objections to the PHA decision.

(3) The PHA must notify the applicant of the PHA final decision after the informal review, including a brief statement of the reasons for the final decision.

24 C.F.R. § 982.554(b).   The following provisions also govern the procedure to be followed before and during the hearing:

(e) Hearing procedures —

. . . .

(2) Discovery —

(i) By family.  The family must be given the opportunity to examine *before the PHA hearing* any PHA documents that are directly relevant to the hearing.  The family must be allowed to copy any such document at the family's expense.  If the PHA does not make the document available for examination on request of the family, the PHA may not rely on the document at the hearing.

(ii) By PHA.  The PHA hearing procedures may provide that the PHA must be given the opportunity to examine at PHA offices before the PHA hearing any family documents that are directly relevant to the hearing.  The PHA must be allowed to copy any such document at the PHA's expense. If the family does not make the document available for examination on request of the PHA, the family may not rely on the document at the hearing.

(iii) Documents.  The term "documents" includes records and regulations.

(3) Representation of family.  At its own expense, the family may be represented by a lawyer or other representative.

(4) Hearing officer: Appointment and authority.

(i) The hearing may be conducted by any person or persons designated by the PHA, other than a person who made or approved the decision under review or a subordinate of this person.

(ii) The person who conducts the hearing may regulate the conduct of the hearing in accordance with the PHA hearing procedures.

(5) Evidence.  The PHA and the family must be given the opportunity to present evidence, and may question any witnesses. Evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings.

(6) Issuance of decision.  The person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision. Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing.  A copy of the hearing decision shall be furnished promptly to the family.

24 C.F.R. § 982.555(e)(2)-(6) (emphasis supplied).  Furthermore, "[w]here a hearing for a participant family is required under this section, the PHA must proceed with the hearing in a reasonably expeditious manner upon the request of the family."  24 C.F.R. § 982.555(d).

In addition to these regulatory requirements, "the Due Process Clause of the U.S. Constitution requires that welfare recipients be afforded an evidentiary hearing with minimum procedural safeguards before their benefits may be terminated." *Basco*

*v. Machin,* 514 F.3d 1177, 1182 n.7 (11th Cir. 2008) (quoting *Goldberg v. Kelly,* 397

U.S. 254, 266 (1970)).  At that hearing, the public housing authority "has the burden

of persuasion *and must initially present sufficient evidence to establish a prima facie*

*case*" that benefits should be terminated.  *Basco,* 514 F.3d at 1182 (emphasis

supplied).  "Thereafter, the Section 8 participant has the burden of production to

show" that her benefits should be continued.  *Id.*

On September 10, 2009, following an evidentiary hearing on plaintiff's

application for preliminary injunctive relief, this court found the following with

regard to the procedures followed during the informal hearing process:

> There is no evidence in this court's record that defendant satisfied
> its initial burden of persuasion during the administrative hearing.
> Instead, the only evidence presented to this court indicates that
> defendant did not offer *any* evidence during the administrative hearing,
> but instead placed the burden on plaintiff in the first instance to refute
> the charges asserted against her.  The evidence further indicates that
> defendant based its decision to terminate plaintiff's benefits — as well
> as its subsequent decision to uphold the termination of benefits — upon
> a review of plaintiff's case file and a newspaper article.  There is no
> indication that plaintiff had access to either of these items prior to the
> administrative hearing, or any notice that the file and newspaper article
> would be relied upon during the hearing.  Thus, without access to all of
> the information in defendant's possession, and without hearing what
> evidence defendant had against her, plaintiff was forced to make her
> case.  Those circumstances do not satisfy the constitutional guarantee of
> procedural due process.[44]

Not much has changed since then.  In fact, discovery has only strengthened plaintiff's

---

[44]Doc no. 12 (Memorandum Opinion on Motion for Preliminary Injunction), at 8.

case by making it apparent that defendant allowed an untrained hearing officer to conduct a hearing in which no evidence was gathered, no witnesses were presented, and no transcript was produced.  Even more significant, there is evidence that the hearing officer spoke to Susie Jones *after the adjournment of the hearing attended by plaintiff* and considered that conversation (which included an alleged eyewitness account of plaintiff's April 2009 arrest) to be "part of the hearing."  There is no indication that plaintiff had any opportunity to respond to Ms. Jones's statements, or even any notice that the hearing officer spoke to Ms. Jones.

For clarity, the court is *not* holding that defendant was required to follow a certain set of trial-like procedures in conducting the informal hearing, or that evidence had to be presented in any particular order during the hearing.  Instead, the court holds that defendant essentially forced plaintiff to prove her innocence, but did not prove its own case, which it had the burden of doing under the regulations quoted above.  Furthermore, the court is *not* holding that an informal hearing officer can never rely on hearsay evidence.  The court's holding is simply that the procedures followed here, taken as a whole, were not sufficient to satisfy constitutional due process requirements.

In summary, the evidence, taken as a whole, establishes that plaintiff's procedural due process rights were violated during the informal hearing process.

Accordingly, plaintiff's motion for summary judgment is due to be granted, and defendant's motion for summary judgment is due to be denied. Even so, plaintiff is not entitled to any more than nominal damages as a result of the judgment in her favor. The record clearly establishes that plaintiff retained her housing benefits throughout these proceedings. In fact, she has now retained them for more than six months *after* pleading guilty to drug-related criminal activity. Furthermore, there is no evidence that any emotional distress plaintiff may have suffered arose from defendant's violation of her procedural due process rights, rather than from plaintiff's arrests.

## V.  CONCLUSION

In accordance with the foregoing, the court finds that plaintiff's constitutional right to procedural due process has been violated. Accordingly, defendant's motion for summary judgment is due to be denied, and plaintiff's motion for summary judgment is due to be granted. The court also finds that, due to plaintiff's May 2010 plea of guilty to drug-related criminal activity warrants the initiation of further proceedings to terminate housing benefits. Accordingly, defendant's motion for leave to initiate termination proceedings is due to be granted. An appropriate order will be entered contemporaneously herewith.

DONE this 2nd day of December, 2010.

_____
United States District Judge